[Cite as *State v. Harper*, 2025-Ohio-2508.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
|  | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. Robert G. Montgomery, J. |
|  | : | Hon. Kevin W. Popham, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 24CA00041 |
| HOWARD E. HARPER, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Appeal from the Guernsey County Court of Common Pleas, Case No. 24CR104

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      July 16, 2025

APPEARANCES:

For Plaintiff-Appellee

MARK A. PERLAKY
Assistant Prosecutor
827 Wheeling Avenue
Cambridge, OH 43725

For Defendant-Appellant

MICHAEL GROH
1938 E. Wheeling Avenue
Cambridge, OH 43725

*Popham, J.,*

{¶1}   Defendant-Appellant Howard E. Harper, Jr.[1] ("Harper") appeals his sentence after a negotiated guilty plea in the Guernsey County Court of Common Pleas. For the reasons below, we affirm.

*Facts and Procedural History*

{¶2}   On June 11, 2024, Harper was indicted on one count of Illegal Use of Supplemental Nutrition Assistance Program (SNAP) Benefits or WIC Program Benefits, in an amount exceeding $1,000 but less than $7,500, a fourth-degree felony, in violation of R.C. 2913.46(B) and (D).

{¶3}   On September 24, 2024, a Crim.R. 11(C) and (F) negotiated plea form, signed by Harper, his attorney, and the assistant prosecuting attorney, was filed. (Docket Entry No. 49).   That same day, Harper entered a guilty plea to the sole count of the indictment.

{¶4}   At the plea hearing, the prosecutor stated that the charge arose after Harper failed to report that he had obtained employment, with his first paycheck dated August 4, 2023. Plea T. at 26.  Following contact with Harper's employer, it was discovered that Harper exceeded the 130% income guideline for receiving SNAP benefits in August 2023. *Id.* Harper was required to report this by September, and the overpayment began in October 2023. His household would not have been eligible for SNAP benefits from November 2023 through May 2024.  The total overpayment was $2,328.  *Id.*

{¶5}   The trial court ordered a presentence investigation report, and sentencing was deferred.

---

[1] Plea T. at 7. The court granted the State's oral motion to amend the indictment to reflect the correct legal name of Defendant-Appellant "Howard E. Harper, Jr."

{¶6} On November 21, 2024, the trial court reviewed the presentence investigation report and heard statements from Harper, his counsel, and the State. The court was informed that Harper had recently been released from prison after serving fifteen years for involuntary manslaughter and burglary, and that he was on post-release control at the time of the offense. Sent. T. at 10-11. The court also heard that Harper had a history of theft-related offenses dating back to 1998. *Id*. at 9. The court further heard that Harper had agreed to pay $2,328 in restitution for the overpayment of SNAP benefits he received while employed. Plea T. at 25; Sent. T. at 4.

{¶7} The trial court sentenced Harper to nine months in prison with no jail-time credit and ordered restitution in the agreed amount. The court further found that Harper was an "intentional program violator" and, as a result, was ineligible to receive governmental assistance for one year. Sent. T. at 20; *Judgment Entry of Sentence,* filed Nov. 21, 2024, at 3.

### Assignment of Error

{¶8} Harper raises one assignment of error,

{¶9} "I. APPELLANT DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY PLEAD GUILTY, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION, AND OHIO CRIM R. 11."

### Law and Analysis

{¶10} In his assignment of error, Harper argues that his plea was not knowingly, intelligently, and voluntarily entered because the trial court did not advise him that, by

pleading guilty, he could be deemed an "intentional program violator" and consequently lose eligibility for governmental assistance for one year.

## Standard of Review

{¶11} When reviewing a plea's compliance with Crim.R. 11(C), we apply a de novo standard of review. *State v. Nero*, 56 Ohio St.3d 106, 108-109 (1990); *State v. Lebron*, 2020-Ohio-1507, ¶ 9 (8th Dist.); *State v. Groves*, 2019-Ohio-5025, ¶ 7 (5th Dist.).

**Issue for appellate review**: *Whether Harper's plea was made knowingly, intelligently, and voluntarily.*

{¶12} Crim.R. 11 requires guilty pleas to be made knowingly, intelligently, and voluntarily. Although literal compliance with Crim.R. 11 is preferred, the trial court need only "substantially comply" with the rule when dealing with the non-constitutional elements of Crim.R. 11(C). *State v. Ballard*, 66 Ohio St.2d 473, 475 (1981), *citing State v. Stewart*, 51 Ohio St.2d 86 (1977).

{¶13} The constitutional rights that a defendant must be apprised of before entering his or her plea are: (1) a jury trial; (2) confrontation of witnesses against him; (3) the compulsory process for obtaining witnesses in his favor; (4) that the state must prove the defendant's guilt beyond a reasonable doubt at trial; and (5) that the defendant cannot be compelled to testify against himself. *State v. Veney*, 2008-Ohio-5200, ¶ 19; *State v. Ballard*, 66 Ohio St.2d 473 (1981), paragraph one of the syllabus, *following Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *State v. Drain*, 2022-Ohio-3697, ¶ 32. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. *Id.* at ¶ 31.

{¶14} The non-constitutional rights that the defendant must be informed of are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions; and (4) that after entering a guilty plea or a no contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10-13; *State v. Sarkozy*, 2008-Ohio-509, ¶ 19-26 (post-release control is a non-constitutional advisement). For the non-constitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15. Furthermore, a defendant who challenges his guilty plea on the basis that the advisement for the non-constitutional rights did not substantially comply with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, meaning the plea would not have been otherwise entered. *Veney* at ¶ 15; *State v. Stewart,* 51 Ohio St.2d 86, 93 (1977).

{¶15} Simplified, the questions to be answered are: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden? *State v. Dangler*, 2020-Ohio-2765, ¶ 17.

{¶16} In this case, the trial court complied with *Ballard* and Crim.R. 11(C)(2)(c) by informing Harper in open court that his guilty plea waived his constitutional rights to a jury trial, to a trial at which the state would be required to prove Harper's guilt beyond a

reasonable doubt, to confront the state's witnesses, to compel the attendance of defense witnesses, and to remain silent. And Harper stated in open court that he understood each of the rights he was giving up.

{¶17} Nevertheless, Harper contends that his negotiated guilty plea was not voluntary, knowing, and intelligent, because the trial judge failed to advise him that by entering a guilty plea, Harper could be deemed an "intentional program violator" and that he could lose governmental benefit assistance for one year.

*Intentional Program Violator*

{¶18} The relevant administrative regulations authorize a trial court to adjudicate intentional program violations and impose a disqualification penalty. Ohio Adm.Code 5101:6-20-01(B)(1) provides for program disqualification where a court finds that an individual committed a criminal offense related to the program. Subsection (D)(1) encourages local agencies "to refer for prosecution individuals suspected of committing an intentional program violation, particularly if the value of benefits involved is large or the individual is suspected of committing more than one act of intentional program violation." Ohio Adm.Code 5101:6-20-01(D)(2) further encourages "local prosecutors to recommend to the courts that a disqualification penalty, as provided for by rule 5101:6-20-03 of the Administrative Code, be imposed in addition to any other civil or criminal penalties for such violations." *See State v. Brown*, 2020-Ohio-5314, ¶ 12 (4th Dist.).

{¶19} Ohio Adm.Code 5101:6-20-03 sets forth the penalties for intentional program violations. Depending on the program and the nature and number of violations, the disqualification period may include: a duration until full restitution is made; twelve months for a first violation; twenty-four months for a second violation; ten years for

receiving multiple benefits simultaneously; or permanent disqualification for a third violation, a first offense involving trafficking in SNAP benefits of $500 or more, or a first offense involving trafficking in SNAP benefits in a transaction involving firearms, ammunition, or explosives. *Brown*, ¶ 13.

### Direct Consequences of the Plea

{¶20} The disqualification imposed in this case is not permanent. Harper's one-year prohibition from receiving governmental assistance will expire on or about November 21, 2025.

{¶21} A duty to notify a defendant of the ban of receiving governmental benefits is not expressed in Crim.R. 11(C)(2)(c). Rather, the requirements of the Rule only encompass a defendant's trial rights. The right to receive governmental benefits, such as SNAP, is not one that bears any relationship to the trial rights of a criminal defendant. "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case, or the likely penalties attached to alternative courses of action." *Brady v. United States*, 397 U.S. 742, 757 (1970). *See also*, *State v. Harris,* 2025-Ohio-692, ¶19 (5th Dist.).

{¶22} Here, the trial court complied with the relevant portions of Crim.R. 11(C)(2)(c).

*Collateral Consequences of the Plea*

{¶23} Criminal convictions can carry a wide variety of consequences other than conviction and sentencing, including civil commitment, civil forfeiture, the loss of the right to vote, disqualification from public benefits, ineligibility to possess firearms, dishonorable discharge from the Armed Forces, and loss of business or professional licenses. *Padilla v. Kentucky,* 559 U.S. 356, 376-377 (2010) (Alito, J, concurring). A criminal conviction may also severely damage a defendant's reputation and thus impair the defendant's ability to obtain future employment or business opportunities. *Id.* We have never construed Criminal Rule 11 to include a requirement that the trial court advise a defendant of every potential collateral consequence of a guilty plea. *See, State v. Dixon*, 2009-Ohio-3137, ¶ 20 (5th Dist.); *Harris,* 2025-Ohio-692, ¶ 21.

{¶24} We have found no authority that requires this Court to presume the failure to advise Harper of a one-year ban on receiving governmental assistance was prejudicial to Harper. Because a potential one-year ban on receiving governmental assistance is not a constitutional right enumerated in Crim.R. 11(C), and rather, is a collateral consequence of the plea, the failure to advise concerning the ban does not excuse a defendant from the burden of demonstrating prejudice.

*Harper Cannot Demonstrate Prejudice*

{¶25} Harper cites to nothing in the record indicating that he would not have entered his plea had he been thoroughly informed of the one-year ban on receiving governmental assistance. In fact, Harper's attorney told the court prior to sentencing,

> Now, I understand the State's position of wanting him to be deemed
> an intentional violator. That was something they had talked about [sic.] us

in the plea offer. And I understand that's the Court's decision, and I'd leave that to the Court's discretion.

Sent. T. at 12. Harper did not express his confusion when asked if he had anything to say before the court pronounced sentence. Further, we would note that Harper received no jail time credit toward the court's nine-month sentence. Harper would be ineligible to receive benefits such as SNAP during the nine months he is incarcerated.

{¶26} Accordingly, Harper has failed to demonstrate prejudice from the failure to advise him of the one-year ban on receiving governmental assistance.

**Conclusion**

{¶27} In the case at bar, we find that the trial court complied with the relevant provisions of Crim.R. 11(C). We further find that the failure to advise Harper of a potential one-year ban on receiving governmental assistance is not a type of advisement that excuses a defendant from the burden of demonstrating prejudice. Therefore, because Harper failed in his burden to demonstrate prejudice from the failure of the trial court to advise him, before he entered a guilty plea, of a potential one-year ban on receiving governmental assistance, we hold that Harper's decision to enter a guilty plea was voluntary, knowing, and intelligent.

{¶28} Harper's sole assignment of error is overruled.

{¶29} The judgment of the Guernsey County Court of Common Pleas is affirmed.

By: Popham, J.,

Baldwin, P.J., and

Montgomery, J., concur